**FILED**

**AUG 1 7 2006**

CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| FERRIS JOSEPH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CORPORATION OF THE PRESIDENT | ) |
| CHURCH OF JESUS CHRIST OF | ) |
| LATTER-DAY SAINTS, a Utah corporation | ) |
| sole, and CORPORATION OF THE | ) |
| PRESIDING BISHOP OF THE CHURCH | ) |
| OF LATTER-DAY SAINTS, a Utah | ) |
| corporation sole, | ) |
| | ) |
| Defendants. | ) |
| | ) |

CASE NO: *C1V06-4143*

## COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby brings this Complaint

against Defendants, CORPORATION OF THE PRESIDENT CHURCH OF JESUS

CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and CORPORATION

OF THE PRESIDING BISHOP OF THE CHURCH OF LATTER-DAY SAINTS, a Utah

corporation sole, as follows:

### Parties, Jurisdiction and Venue

1.      Plaintiff Ferris Joseph is a citizen and resident of South Dakota and is sui

juris.

2.      Defendants, CORPORATION OF THE PRESIDENT CHURCH OF

JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and

CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF LATTER-

DAY SAINTS, a Utah corporation sole (collectively "the CHURCH"), are citizens and

residents of the State of Utah.

3.    Jurisdiction is proper under U.S.C. §1332(a)(1) as the matter in controversy exceeds the amount of $75,000, and this action is between citizens of different states.

4.    Venue is proper in this District as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## Factual Allegations

5.    Plaintiff Ferris Joseph is a Native American, born in July, 1955.  In the period 1966-1968, when Ferris was ages 10-12, he lived with his family in Sioux Falls, South Dakota.

6.    Ferris's family were members of the CHURCH.  Ferris was baptized in the CHURCH when he was approximately 9 years old, along with his two brothers.

7.  In or about 1967, two missionaries who had been sent by the CHURCH came to Ferris's home.

8.    Missionaries of the CHURCH are volunteers recruited by the CHURCH who are assigned to missions located across the country and the world.  They are sent out to preach the gospel of the CHURCH, typically in pairs, and commonly will walk "door to door" in residential neighborhoods to perform their work.  The missionaries are trained by the CHURCH, and are under the CHURCH'S supervision and control while performing missionary duties.

9.    One of the two missionaries who came to the home of Ferris's family, upon information and belief, was Richard Joseph White.  He identified himself as an "Elder" of the CHURCH, a term of respect and endearment.  Because of his status as an "Elder", who had come to them under the imprimatur and aegis of the CHURCH, Ferris

2

and his parents trusted "Elder" White completely. As a baptized member of the CHURCH, Ferris was taught and trained to respect the Elders and follow their direction.

10.   The CHURCH mission in which Elder White was based was known as the Northern Indian Mission located in Rapid City, South Dakota. Elder White was assigned to the Flandreau, South Dakota area, and he lived in Flandreau. Elder White and his missionary companion often picked up Ferris and his brothers, and took them on activities. In this manner, Elder White "groomed" Ferris and his brothers, further solidifying their trust.

11.   On many occasions, Elder White took Ferris to his apartment in Flandreau, where he sexually abused and raped him, including acts of sodomy, oral sex and masturbation.

12.   The sexually, emotional and spiritual abuse committed by Elder White on Ferris was open and long lasting, such that CHURCH officials, administrators and supervisors of Elder White knew or should have known of his sexual abuse of Ferris.

13.   Upon information and belief, Elder White was a preferential child molester or pedophile, who engaged in a pattern of grooming and sexual abuse on other boys as well as Ferris.

14.   The CHURCH concealed or failed to disclose information that was pertinent and necessary for Ferris to bring civil claims in this matter.

15.   Until October, 2004, Ferris had no memory of the abuse. At that time, he visited his sister in Canada who is a devout member of the Church and recovered his memories of the abuse.

16.   The CHURCH's policy and practice at all relevant times was to ignore

3

indications and warnings of abusive behavior by its missionaries and to fail to report such conduct to the authorities.  At the same time, pedophiles and child molesters were attracted to missionary work, as it gave them access to child victims, while the CHURCH did not investigate their backgrounds and failed to address complaints of abuse or suspicious activities of its missionaries.

17.    Elder White and FERRIS were in a fiduciary relationship.  Elder White held a special position of trust and confidence with FERRIS.  FERRIS looked to Elder White for counseling and guidance.

18.    At all relevant times, the CHURCH was in a fiduciary relationship with FERRIS.  The CHURCH was in a position of trust and confidence with FERRIS. FERRIS looked to the CHURCH and its representatives for counseling and guidance.  In addition, the CHURCH knew that FERRIS had a special and privileged relationship with Elder White.  The CHURCH owed FERRIS a fiduciary duty to:

    (a)    Investigate and warn FERRIS of the potential for harm from Elder White;

    (b)    Disclose its awareness of facts regarding Elder White that created a likely potential for harm;

    (c)    Disclose its own negligence with regard to training, supervision and retention of Elder White;

    (d)    Provide a safe environment for FERRIS where he would be free from abuse; and

    (e)    Protect FERRIS from exposure to harmful individuals like Elder White.

4

19.    The CHURCH breached its fiduciary duty to FERRIS by failing to:

    (a)    Investigate and warn FERRIS of the potential for harm from Elder White;

    (b)    Disclose its awareness of facts regarding Elder White that created a likely potential for harm;

    (c)    Disclose its own negligence with regard to hiring, supervision and retention of Elder White;

    (d)    Provide a safe environment for FERRIS where he was free from abuse; and

    (e)    Protect FERRIS from exposure to harmful individuals like Elder White.

20.    The CHURCH actively and fraudulently concealed information pertinent and relevant to claims relating to the sexual abuse in this matter for the purpose of protecting itself from civil liability and evading same.

## *NEGLIGENCE*

21.    Plaintiff repeats and re-alleges Paragraphs 1 through 20 above.

22.    At all material times, the CHURCH owed a duty to Plaintiff to use reasonable care to ensure the safety, care, well being and health of the minor FERRIS while he was under the care, custody or in the presence of the CHURCH and/or its agents. The CHURCH's duties encompassed the hiring, retention and/or supervision of Elder White and otherwise providing a safe environment for FERRIS.

23.    The CHURCH breached these duties by failing to protect the minor FERRIS from sexual assault and lewd and lascivious acts committed by the agent and/or

5

employee of the CHURCH, Elder White.

24.     At all relevant times, the CHURCH knew or in the exercise of reasonable care should have known that Elder White was unfit, dangerous, and a threat to the health, safety and welfare of the minors entrusted to his counsel, care and protection.

25.     Despite such actual or constructive knowledge, the CHURCH provided Elder White unfettered access to FERRIS and gave him unlimited and uncontrolled privacy.

26.     At all relevant times, the CHURCH created an environment which fostered child sexual abuse against children it had a duty to protect, including FERRIS.

27.     At all relevant times, the CHURCH had inadequate policies and procedures to protect children it was entrusted to care for and protect, including FERRIS.

28.     As a direct and proximate result of the CHURCH's negligence, FERRIS suffered severe and permanent psychological, emotional and physical injuries, including but not limited to shame, humiliation and the inability to lead a normal life.

WHEREFORE, the Plaintiff, Ferris Joseph, prays that judgment be entered in his favor and against the Defendants, CORPORATION OF THE PRESIDENT CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF LATTER-DAY SAINTS, a Utah corporation sole, for compensatory damages, costs, and for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action.

Dated this 16th of August, 2006.

6

Respectfully submitted,

STEPHANIE E. POCHOP, ESQ.
**JOHNSON EKLUND & NICHOLSON**
405 Main Street
Gregory, South Dakota  57533
Telephone: (605) 835-8391
Facsimile:   (605) 835-8742
-and-

(Attorneys for Plaintiffs Pending Approval
of Motion for Pro Hac Vice Admission)
**HERMAN & MERMELSTEIN, P.A.**
JEFFREY M. HERMAN, ESQ.
STUART S. MERMELSTEIN, ESQ.
ADAM D. HOROWITZ, ESQ.
18205 Biscayne Boulevard, Suite 2218
Miami, Florida 33160
Telephone: (305) 931-2200
Facsimile: (305) 931-0877

7