UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FERRIS JOSEPH,<br><br>    Plaintiff,<br><br>vs.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>    Defendants. | CIV. No.06-4143<br><br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints (collectively "the Church") by and through their attorneys of record James E. McMahon of McMahon Law Office, P.C. and Jonathan A. Kobes of Murphy, Goldammer & Prendergast, L.L.P., and hereby submit this Memorandum in Support of Motion for Summary Judgment.

### INTRODUCTION

This case involves an allegation by Plaintiff Ferris Joseph that he was sexually abused in or about 1968 by a missionary of The Church of Jesus Christ of Latter-day Saints. Joseph alleges that the Church was negligent in hiring, supervising and retaining the missionary and in failing to protect him from the alleged abuse. Joseph does not allege that the Church is vicariously liable for the alleged abuse.

The Church seeks summary judgment on the following grounds.  First, Joseph's claim—which relates to sexual abuse which is alleged to have occurred in 1968—is barred by South Dakota's statute of limitation.  Second, the First Amendment and the South Dakota State Constitution bar negligence claims based upon the hiring, supervision and retention of the Church's missionaries.  Third, Joseph's negligence claim fails on the merits as a matter of law because South Dakota law does not recognize a special relationship between a Church and its members that would give rise to a duty to protect and there is no evidence of any kind that the Church was aware of facts or information that would make the alleged abuse foreseeable.

## BACKGROUND

### A.      The Parties.

Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints is a nonprofit, corporation sole that funds the ecclesiastical operations of The Church of Jesus Christ of Latter-day Saints, including its missions.  (Affidavit of Rex C. Reeve, Jr. ¶ 8.)[1]

The missionary effort of the Church is conducted via geographic organizations called Missions.  Single men between the ages of 19 and 25, single women over age 21 and retired married couples who are worthy to serve missions may be selected as missionaries.  The missionaries are unpaid volunteers and even pay their own expenses.  (Reeve Affidavit ¶ 9.)

Between November 8, 1967, and July 13, 1968, Robert Lewis White ("White") served as a voluntary missionary for the Church.  White was assigned to the Northern

---

[1] Corporation of the Presiding Bishop has no connection to this litigation and is not a proper party to this suit, but that will not be addressed in this motion.

Indian Mission.  The purpose of the mission was to pursue efforts of the Church to

Native Americans in Montana, Wyoming, North Dakota, South Dakota, Nebraska and

Minnesota (Reeve Affidavit ¶¶ 3, 4 and Affidavit of Paul D. Rytting ¶ 8.)  During the time

period relevant to this lawsuit, White lived in Flandreau, South Dakota with his mission

companion, Jay Larson ("Larson").

     Plaintiff Ferris Joseph (Joseph) was born in July 1955.  In 1967 and 1968,

Joseph lived with his family in Sioux Falls, South Dakota.  Joseph was a member of the

Church.  (Ferris Joseph Depo. 4:23-24, 5:4-5, 14:24-25, 64:12-20)

**B.**    **Alleged Sexual Abuse.**

     Joseph testified that when he was 11 or 12 he was sexually abused by White in

White's and Larson's apartment in Flandreau, South Dakota.  (Ferris Joseph Depo.

64:12-20, 81:3-19, 84:25-91:25.)  He testified that this abuse took place in a bedroom

and that nobody else was present in the bedroom when the abuse took place.  (Ferris

Joseph Depo. 90:25-91:25.)

     White denies that he sexually touched Joseph in any way and testified that he

was celibate the entire time he was on his mission.  (White Depo. 59:19-60:11, 79:13-

22)  White's companion while he was in Flandreau, Jay Larson, testified that while they

were companions in Flandreau, South Dakota, he and White complied with the Church's

rule that companions always stay in sight of each other and that he had no knowledge

of any inappropriate contact by White with anyone during his mission.  (Larson Depo.

95:24-96:2, 102:7-103:13.)

     Joseph claims to have had no memory of the abuse until approximately October

2004, when he recovered memories of the abuse – allegedly suppressed for 37 years –

while visiting his sister in Canada.  (Ferris Joseph Depo. 111:21-112:20.)  Joseph's

Complaint was filed on August 17, 2006, Complaint, Doc. No. 1, nearly forty years after

the alleged abuse occurred.

      C.     **<u>The Church Lacked Knowledge of the Alleged Abuse Until 2004.</u>**

Joseph never told anyone – including his family and anyone connected with the

Church that he had been abused by White until October 2004.  (Ferris Joseph Depo.

92:1-6, 93:17-20,108:1-3,136:4-14.)

The Church did not learn of the abuse until late in 2004, when Joseph met with

his sister's Bishop and told him that he had been abused by a missionary as a child.

(Rytting Affidavit ¶ 5.)

Melvin Taylor was White's companion in Lake Andes and Wagner, South Dakota

(Taylor Depo. 43:9-44:15.)  The only thing White did while he was Taylor's companion

that Taylor thought was inappropriate was that White went for a drive by himself once

which was in violation of the church policy that companions always stay within sight of

each other.  (Taylor Depo. 89:23-90:3.)  Taylor was not aware of anything that made

him think White would touch someone inappropriately.  (Taylor Depo. 90:4-91:6.)

Larson was White's companion while White was in Flandreau.  (Larson Depo.

35:8-16.)  Larson had no knowledge or information of any inappropriate contact by

White with anyone while he was White's companion.  (Larson Depo. 95:24-96:2, 103:7-

13.)

Joseph is similarly not aware of any fact to support an allegation that Larson or

anyone else connected with the Church was aware either of the alleged abuse or any

facts or information suggesting that White was a threat to Joseph or any other child.

(Ferris Joseph Depo. 106:8-107:4; 103:25-104:17.)

Upon learning of the alleged abuse in 2004, the Church promptly offered, and paid for, counseling in an attempt to assist Joseph.  (Ferris Joseph Depo. 138:21-139:3.)

## LEGAL ARGUMENT

### A.    Standard for Summary Judgment.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir.1996).  A defendant may establish a right to summary judgment by "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the [plaintiff's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 3317, 325, 106 S. Ct. 2548 (1986); *Verizon Wireless (VAW) LLC v. Sahr,* 457 F. Supp.2d 940, 943 (D.S.D. 2006).  The burden then shifts to the plaintiff to "establish significant probative evidence to prevent summary judgment."  *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank,* 934 F.2d 976, 979 (8th Cir. 1991).  Summary judgment is mandatory where the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial."  *Celotex Corp.,* 477 U.S. at 322-23.

### B.    Joseph's Claims are Barred by the Statute of Limitations. [2]

"There is no doubt that sexual abuse of minors is a serious and sensitive problem in our society.  It is imperative, however, that the shocking nature of the alleged facts not affect the judgment of the courts with respect to controlling legal principles."  *Baily v. Lewis,* 763 F. Supp. 802, 804 (E.D. Pa. 1991).  One of those controlling legal principles

---

[2]  "South Dakota substantive law, including its statute of limitations, governs this diversity action." *Pecoraro v. The Diocese of Rapid City,* 435 F.3d 870, 873 (8th Cir. 2006).

is the statute of limitations.  Statutes of limitations are "vital to the welfare of society and favored in law.  They are found and approved in all systems of enlightened jurisprudence."  *Wood v. Carpemer*, 101 U.S. 135, 139 (1879).  Justice Holmes wrote that limitations periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944).[3]  The South Dakota Supreme Court has repeatedly emphasized "that a defense based on a statute of limitations is meritorious and should not be regarded with disfavor.  It should be treated like any other defense." *Hove v. Does*, 501 N.W.2d 366, 370 (S.D. 1993).

The abuse in this case allegedly took place almost 40 years ago.  Joseph's claim was once time-barred.  *See Shippen v. Parrott*, 506 N.W. 2d 676 (S.D. 1993).  It is still barred unless SDCL § 26-10-25, which was enacted in 1991, is applicable.  SDCL § 26-10-25 provides:

> Any civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later.

SDCL § 26-10-25 does not apply here for two reasons.  First, this is not an action "based on intentional conduct" and therefore the statute is inapplicable.  Second, even if this were an action based on intentional conduct, § 26-10-25 cannot constitutionally be

---

[3] This case is a vivid example of why a statute of limitation is necessary.  There are three witnesses who are either deceased or incapacitated.  Harvey Dahl, deceased, was the President of the Northern Indian Mission from 1967 through June 1970, the time period when White was on his mission.  James Henry Norman, counselor to Mission President Dahl, is also deceased.  Clifton Donaldson Boyack, the Stake President of the Stake Robert White belonged to when he went on his mission, is deceased.  Stanley D. Roberts, the bishop of the ward that White belonged to when he went on his mission, is incapacitated and not able to be interviewed.  (Rytting Affidavit ¶ 7.)

applied retroactively to revive an already-barred claim.  Whether or not § 26-10-25 applies in this case is a question of law to be decided by the Court.  *See Pecoraro*, 435 F.3d at 873 (citing *Stratmeyer v. Stratmeyer*, 567 N.W.2d 220, 222 (S.D. 1997)).

### 1.  SDCL § 26-10-25 Does Not Apply Because This Is Not An Action "Based On Intentional Conduct."

SDCL § 26-10-25 extends the statute of limitations in cases "*based on intentional conduct . . .* for recovery of damages for injury suffered as a result of childhood sexual abuse . . . ." (emphasis added.)  Joseph's claim against the Church, however, is expressly one for negligence.  *See* Complaint at p. 5.  Joseph does not allege any intentional wrongdoing by the Church, nor has Joseph alleged that the Church is liable for the actual perpetrator's intentional wrongdoing under a theory of *respondeat superior*.  The question, therefore, is whether "based on intentional conduct" includes negligence claims where the underlying facts are intentional acts (as in this case) or whether the statute only applies to the underlying act and not to related negligence claims.  If the latter position is correct, Joseph's claim falls outside the provisions of § 26-10-25.

The South Dakota Supreme Court has not specifically considered whether SDCL § 26-10-25 extends the statute of limitations for negligence actions, so this Court must determine what the Supreme Court "would probably hold were it to decide the issue,*" Anderson v. Nissan Motor Co., Ltd.*, 139 F.3d 599, 601 (8th Cir. 1998).  "Construing a statute is a question of law" to be decided by the Court.  *In re Estate of Meland*, 712 N.W.2d 1, 6 (S.D. 2006) (internal quotation marks and brackets omitted).  One of the fundamental rules of statutory interpretation is to give effect to every part of the statute, *see State v. Heisinger*, 252 N.W.2d 899, 903 (S.D. 1977), and to "assume that the

Legislature intended that no party of its statutory scheme be rendered mere surplusage," *Faircloth v. Raven Indus., Inc.*, 620 N.W.2d 198, 201 (S.D. 2000).

Interpreting § 26-10-25 to extend the statute of limitation for negligence causes of action would do exactly that—render statutory language surplusage.  On its face, the statute applies to civil actions "based on intentional conduct . . . for recovery of damages for injury suffered as a result of childhood sexual abuse."  Childhood sexual abuse, however, is by definition intentional conduct.  *See Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 604 (Colo. App. 2000).  Accordingly, if the language "based on intentional conduct" refers to the underlying act of intentional sexual abuse, it is surplusage—if left out, the meaning of the statute would not change:  "Any civil action . . . . brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse [intentional conduct] . . . ."

It is also helpful to examine the statutory definition of *childhood sexual abuse* contained in SDCL § 26-10-29.  *Childhood sexual abuse* is defined as "acts committed by *the defendant* against the complainant who was less than eighteen years of age at the time of the act *which act would have been a violation of chapter 22-22* or prior laws of similar effect at the time the act was committed *which act would have constituted a felony*."  SDCL § 26-10-29 (emphasis added).  By its own terms, then, the extended statute of limitations only applies to (1) acts committed by the defendant, (2) which violated chapter 22-22 when committed, and (3) constituted felonies.  The defendants in this case, however, are not accused of any criminal acts—they are accused of negligence.  SDCL § 26-10-25 should therefore not apply to extend the statute in this case.

While the South Dakota Supreme Court has not specifically addressed the issue, those courts that have interpreted similar statutes have split.  On the one hand, the Washington Supreme Court held that an action is "based on intentional conduct" if intentional sexual abuse is the starting point of the claim.  *C.J.C. v. Corporation of Catholic Bishop of Yakima*, 985 P.2d 262, 267 (Wash. 1999).

In contrast, the Rhode Island Supreme Court has concluded:

> Thus, the only intended target of the legislation is the person who at the time of the abuse would have been subject to criminal prosecution . . . . That person under our law can only be the person who actually commits the criminal sexual act, namely, the perpetrator, and not his or her employer or supervisor, unless that employer or supervisor actually aids and assists in the commission of the criminal act to the degree that he or she would be subject to prosecution . . . .  The statute's definition of "childhood sexual abuse" dictates that only violations of [criminal statutes], actual perpetrators, can be defendants under § 9-1-51 [the extended statute of limitations] because by using "the" as opposed to "a" when referencing defendants, the Legislature limited the class of potential defendants subject to § 9-1-51.

*Kelly v. Marcantonio*, 678 A.2d 873, 876 (R.I. 1996).  The California Court of Appeals reached the same conclusion in interpreting another nearly-identical statute:  "By its plain terms, section 340.1 applies an extended statute of limitations *only to those defendants who perpetrate, against minors, certain intentional criminal acts prohibited by law*."  *Debbie Reynolds Professional Rehearsal Studios v. Superior Court of Los Angeles*, 30 Cal. Rptr. 2d 514, (Cal. App. 1994) (emphasis added).[4]

The plain meaning of the phrase "based on" also supports excluding negligence from the statute in question.  The Washington Supreme Court asserts in *C.J.C.*, based on a dictionary definition of the word *base*, that the "starting point or foundation" of a

_____

[4] In *Werre v. David*, 913 P.2d 625 (Mont. 1996), the Montana Supreme Court held that the phrase "based on intentional conduct" referred to the underlying sexual abuse.  Notably absent from the definition of *childhood sexual abuse* under Montana law, however, is the phrase "by the defendant."  *See* Mont. Stat. Ann. § 27-2-216(3).

negligence claim in a child sexual abuse case is the abuse, therefore, the negligence claim is "based on" the underlying abuse—an intentional act.  It is more accurate to say that the "base" or "starting point" or "foundation" of a negligence claim, regardless of the direct cause of the underlying injury, is the negligence.  In a typical child-abuse case, the abuse may go on for years before a third party receives notice of it.  If that party has a duty to act and negligently fails to do so, that failure is the "foundation" or "starting point" of a cause of action in negligence against that party.  The cause of action did not exist before that failure and would not exist without it.  To be sure, the abuse is obviously a necessary precondition for such a negligence claim, but it is not the "foundation" for the negligence claim, the negligence is.  The South Dakota Supreme Court speaks routinely of claims "based on negligence."[5]

Indeed, the South Dakota Supreme Court has held that an action for negligent hiring, supervision, and retention is "based on negligence" and therefore governed by the statute of limitations applicable to negligence actions, even where the underlying conduct was an intentional sexual act.  In *Rehm v. Lenz*, 547 N.W.2d 560 (S.D. 1996), a husband and wife brought suit against a therapist's employer after the therapist began a romantic relationship with the wife while counseling her.  The first two claims were based on the employer's negligence in hiring and supervising the therapist.  The South Dakota Supreme Court held that the trial court was correct to apply the three-year statute of limitations for negligence claims.

---

[5] *See, e.g., Pankratz v. Miller*, 401 N.W.2d 543, 549 (S.D. 1987) (""The gravamen of an action for alienation of affections is enticement.  It is *based on* an intentional tort, not negligence.") (emphasis added); *Hendrix v. Schulte*, [2007 S.D. 73, ¶7, 736 N.W.2d 845] ("In order to prevail in a suit *based on* negligence . . . ." ) (emphasis added); *Harris v. Riggenback*, 633 N.W.2d 193,  195 (S.D. 2001) ("Harris also asserted claims *based on* negligence . . . .") (emphasis added).  Notably, in *C.J.C.* the Court was able to buttress its interpretation by pointing to another provision within the child sex-abuse act that "expressly includes within its scope suits against *negligent* entities."  *C.J.C.*, 985 P.2d at 268 (citing RCW § 4.16.350).  There is no similar provision in South Dakota law.

> Here, Counts I and II sound in negligence based on the employment
> relationship between West River and Lenz. **The claims based on**
> respondeat superior and **failure to exercise care in hiring, supervising,**
> **and retaining Lenz are plainly based on negligence**, to which the
> longer three-year limitation period applies.

*Id*. at 566 (emphasis added). Like *Rehm*, Joseph here alleges negligence in the hiring,

retention, and supervision of White. *See* Complaint, ¶ 22 ("the Church's duties

encompassed the hiring, retention and/or supervision of White and otherwise providing

a safe environment for [Plaintiff].").   And, as in *Rehm*, those claims are "based on

negligence," not on the underlying intentional sexual misconduct. *Rehm*, 547 N.W.2d at

566.   Accordingly, the extended statute of limitations for actions "based on intentional

conduct" does not apply and Joseph's claim is barred.

### 2.   Under South Dakota Law, A Time-Barred Claim Cannot Be Revived By Amending The Statute Of Limitations.

Even if the Court concludes that § 26-10-25 is applicable to a negligence claim, it

still cannot be made to apply *retroactively* to this case.   With only one aberration, the

South Dakota Supreme Court has consistently held that a time-barred claim cannot be

revived by amending the statute of limitation.

Joseph was allegedly sexually abused in 1968.   At that time, the governing

statute of limitations required claims for personal injury to be brought "within three years

after the cause of action shall have accrued."   SDCL § 15-2-14(3).   Joseph's cause of

action accrued when he reached the age of majority in July 1973. *See* SDCL § 15-2-22.

This is true even if Joseph had suppressed his memory of the abuse. *See Shippen*,

506 N.W.2d at 85 ("The legislature has . . . acknowledged and rejected a discovery rule

in South Dakota.   We cannot abridge that intent.").   Joseph's claim therefore became

time-barred in July 1974. *See Weegar v. Bakeberg*, 527 N.W.2d 676, 678 (S.D. 1995)

(SDCL § 15-2-22 "tolls the statute of limitations for most civil actions accruing to a minor until one year after reaching the age of eighteen").

The South Dakota legislature enacted SDCL § 26-10-25 in 1991.  The question, then, is whether the statute applies retroactively to revive Joseph's already-barred claim.  Under South Dakota law, a statute will not be applied retroactively unless (1) "such intention plainly appears," SDCL § 2-14-21, and (2) the statute is merely procedural or remedial and does not affect substantive rights, *see Hove v. Does*, 501 N.W.2d 366, 369 (S.D. 1993).

The South Dakota Supreme Court has consistently held that statutes of limitation involve a Defendant's substantive rights and therefore cannot be retroactively extended. *See, e.g. West v. John Morrell & Co.*, 460 N.W.2d 745 (S.D. 1993) ("Statutes affecting substantive rights are not to be given retroactive effect"); *Hove*, 501 N.W.2d at 369. ("Where a statute limits the time during which a cause of action can arise, it abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.  *It is substantive*.") (emphasis added).  In *Hove*, the Court was clear that a dead claim cannot be revived regardless of legislative intent:

> Even the state legislature which creates a statute of limitations may not enact a statute that retroactively revives a cause of action already barred by the statute of limitations.  When a right to sue has expired under the applicable statute of limitations prior to the effective date of a new and longer statute, the new limitations period cannot revive the expired cause of action.

*Id*. at 370.  "To hold otherwise," the Court said, would allow any limitations period to be retroactively expanded, "thus making the purpose of statutes of limitations meaningless."  *Id*.; *see also Dotson v. Serr*, 506 N.W.2d 421, 423 (S.D. 1993).

In *Koenig v. Lambert*, 527 N.W.2d 903 (S.D. 1995), the South Dakota Supreme Court held that SDCL § 26-10-25 did not apply to already-barred child sexual abuse claims.  The Court observed that there was no plain intent that the statute be retroactively applied.  *Id.* at 904.  The Court also observed:

> [E]ven if SDCL 26-10-25 was to be applied retroactively, this Court previously held that a cause of action barred by the applicable statute of limitations cannot be revived by a subsequent change in the law which extends the time for bringing that particular cause of action.  Therefore, SDCL 26-10-25 cannot be applied to this case . . . .

*Id.* at 904-05.

Just two years later *Koenig* was followed by in *Stratmeyer v. Stratmeyer*, 567 N.W.2d 220 (S.D. 1997).  *Stratmeyer* ruled only that the South Dakota legislature intended SDCL § 26-10-25 to be retroactive, and therefore it was.  Stratmeyer did not reference, however, *Koenig*'s second holding that the legislature could not revive already-barred claims.  In fact, *Stratmeyer* did not even mention the several previous cases holding that statutes of limitation affected substantive rights and therefore could not be applied retroactively.[6]

The South Dakota Supreme Court has not readdressed this issue since *Stratmeyer* was decided.  But two decisions of this Court have, reaching different conclusions.  In the first, *Gross v. Weber*, 112 F. Supp. 2d 923 (D.S.D. 2000), the Court held that SDCL § 26-10-25 could not be applied retroactively.  The opinion noted that

---

[6]Additionally, in *Stratmeyer* the Court stated that "if there is any doubt as to which statute applies, such doubt should be resolved in favor of the longer limitation period."  *Stratmeyer*, 567 N.W.2d at 224 n.9.  In *Hove,* however, the Court noted a different presumption, "In every case of doubt, the doubt must be resolved against the retrospective effect and in favor of prospective construction only."  *Hove*, 501 N.W.2d at 369.  "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."  *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).

the rule against retroactive application of limitation statutes "has been consistently

applied by the South Dakota Supreme Court." *Id.* at 926. The opinion then explains:

> The South Dakota Supreme Court's opinion in *Koenig* was based not only
> on the premise that SDCL 26-10-25 could not be applied retroactively to
> abuse which had occurred prior to its enactment in 1991, but also on the
> premise that even if applied retroactively, it could not revive a cause of
> action which had already expired. The *Stratmeyer* decision did not
> address the South Dakota Supreme Court's decisions holding that the
> legislature did not have the authority to revive a dead cause of action.
> The decision rested on the legislature's intent. However, the South
> Dakota Supreme Court has made it clear, that notwithstanding the
> legislature's intent, "legislation attempting to revive previously time-barred
> claims impermissibly interferes with a defendant's vested rights and
> violates due process."

*Id.* (quoting *Serr*, 506 N.W.2d at 423).

DeLonga v. Diocese of Sioux Falls*, 329 F. Supp. 2d 1092 (D.S.D. 2004),

reached a different conclusion. "Although the Supreme Court may not have addressed

the earlier cases" in *Stratmeyer*, the *DeLonga* decision reasons, it "very clearly

abrogated its earlier decision in *Koenig*," which had relied, in part, on those earlier

decisions. *Id.* at 1100-01. "By so doing, the South Dakota Supreme Court rejected the

contention that the underlying authority for the *Koenig* decision was controlling on the

issue of retroactive application of S.D.C.L. § 26-10-25." *Id.* at 1101.

Although neither *Gross* nor *DeLonga* controls here, *Gross* is the more persuasive

authority. *DeLonga* suggests that the rule against retroactivity announced in these

earlier cases does not apply to child abuse litigation, which "is of relatively recent

origin." *DeLonga*, 329 F. Supp. 2d at 1101. But the holdings in *West*, *Hove*, *Serr*, and

*Barrow* state a blanket rule—"[T]he state legislature which creates a statute of

limitations may not enact a statute that retroactively revives a cause of action already

barred by the statute of limitations. . . . [T]he new limitations period cannot revive the

expired cause of action." *Barrow*, 521 N.W.2d at 142 (quoting *Hove*, 501 N.W.2d at 370).  There is no room for an exception for child-abuse cases.  Moreover, this is not merely a judge-made rule of statutory interpretation that can be discarded for different policy reasons; it is a strict limitation on legislative power grounded in the defendant's right to due process.  *See Barrow*, 521 N.W.2d at 142 (quoting *Serr*, 506 N.W.2d at 423).  There is no persuasive reason why a Defendant should not be entitled to due process protections in cases of alleged child sexual abuse.

*DeLonga poses* additional concerns.  The *DeLonga* opinion cites *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) in an attempt to show that statutes of limitation do not create vested rights.  But the issue in *Chase* was whether a statute of limitations created a fundamental right for equal protection purposes, not whether a defendant had a vested right against the revival of a time-barred claim.  Further, the South Dakota Supreme Court had rejected this argument in *Serr*.  *Serr*, 506 N.W.2d at 423.

Also, while the *DeLonga* opinion says that *Stratmeyer* must have considered and rejected the South Dakota Supreme Court's earlier decisions on which *Koenig* relied, *Stratmeyer* simply could not have reversed *Koenig* in its entirety without also overruling *West*, *Hove*, *Serr*, and *Barrow*.  Interestingly, however, *Hove* has been reaffirmed since *Stratmeyer* was decided.  In *Homestake Mining Co. v. South Dakota Subsequent Injury Fund*, 644 N.W.2d 612 (S.D. 2004), the South Dakota Supreme Court was again faced with a claim that was time-barred under a previous statute of limitations but potentially revived by an amendment to the statute.  The Court held that the statute of limitations "as it was in effect at the time of the injuries, applied to Homestake's claims," and "[a]fter

that period expired and Homestake had done nothing to preserve its claims within that time, no action by the state legislature would revive these claims." *Id.* at 619. Quoting *Hove*, the Court again reiterated that "'[s]tatutes which affect substantive rights are not given retroactive effect.'" *Id.* (quoting *Hove*, 501 N.W.2d at 369). To further emphasize its point, the Court then quoted a decision from the Florida Court of Appeals holding that once a claim is time-barred "'it is dead and no further act by ANYONE can breathe life into the'" claim. *Id.* at 620 (quoting *Special Disability Trust Fund v. Southern Bell Tel. & Tel. Co.*, 551 So.2d 575, 576 (Fla. Ct. App. 1989)).

There is no principled way to distinguish *West*, *Hove*, *Serr*, *Barrow*, and *Homestake Mining* from this case. *Stratmeyer* must therefore be considered *sui generis*. The long-standing rule, otherwise consistently followed by the South Dakota Supreme Court, is that statutes of limitation are substantive and cannot be applied retroactively. The Court should rule accordingly.

It should not go unsaid that the rule that a defendant has a substantive, vested right in a time-barred claim that cannot be retroactively removed is also correct as a matter of law. The Eighth Circuit has noted that the argument "that because statutes of limitations are procedural in nature, a retroactive effect does not impair any rights, increase any liability, or impose new duties . . . has been persuasively rejected." *In re ADC Telecommunications, Inc. Securities Litigation*, 409 F.3d 974, 977 (8th Cir. 2005). The Supreme Court has accordingly recognized "that extension of even an expired civil limitations period can unconstitutionally infringe upon a 'vested right'." *Stogner v. California*, 539 U.S. 607, 632 (2003); *see William Danzer & Co. v. Gulf & S.I.R. Co.*, 268 U.S. 633, 637 (1925) ("Section 206(f) [a statute of limitations] will not be construed

retroactively to create liability.  To give it that effect would be to deprive defendant of its property without due process of law in contravention of the Fifth Amendment.").

Viewed against this context the holdings of the South Dakota Supreme Court in *West*, *Hove*, *Serr*, *Barrow*, and *Homestake Mining* are correct as a matter of law. *Stratmeyer* is an aberration and its holding should be limited.  It did not overturn or even distinguish previous authority—which have since been reaffirmed.  Applying SDCL § 26-10-25 retroactively would therefore violate the Church's due process rights and the motion for summary judgment should be granted.

### C.   Defendants are Entitled to Summary Judgment on the Merits of Joseph's Negligence Claim.

Joseph asserts that the Church is directly liable to him for various negligent acts or omissions including negligence in the hiring, supervision and retention of White and the failure to warn Joseph about and protect him from White's abusive tendencies. Specifically, Joseph asserts that the Church failed to:

- Investigate and warn Joseph of the potential for harm from White;

- Disclose its awareness of facts regarding White that created a likely potential for harm;

- Disclose its own negligence with regard to hiring, supervision and retention of White;

- Provide a safe environment for Joseph where he was free from abuse; and

- Protect Joseph from exposure to harmful individuals like White.

(Complaint ¶ 19.)

The Court should grant summary judgment in favor of the Church for two independent reasons: (1) the claim is barred by the First Amendment and the South

Dakota Constitution; and (2) the Church did not owe a duty to Joseph because there was neither a special relationship between the Church and Joseph nor was the harm allegedly suffered by Joseph foreseeable.

1.   **The First Amendment and the South Dakota Constitution Bar Joseph's Negligence Claim.**

The First Amendment does not immunize churches from tort liability. It does, however, limit the types of claims that may be brought against them. One fundamental limit imposed by the First Amendment is that civil courts are constitutionally barred from adjudicating claims that require the examination of religious doctrine and polity.

Since *Watson v. Jones*, 80 U.S. (13 Wall.) 679 (1871), the United States Supreme Court has repeatedly held that "'civil courts exercise no jurisdiction'" over "'a matter which concerns theological controversy.'" *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713-14 (1976) (quoting *Watson*, 80 U.S. (13 Wall.) at 733-34). Thus, civil courts can never "engage in the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969). Such a process "can play *no* role in any . . . judicial proceedings" because it unconstitutionally "inject[s] the civil courts into substantive ecclesiastical matters." *Id.* at 450-51 (emphasis original). Churches must have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952). The South Dakota Supreme Court has recognized these principles in holding that both the First Amendment and the South Dakota Constitution "preclude civil courts from entertaining religious disputes over doctrine" and

internal church practices. *Decker v. Tschetter Hutterian Brethren, Inc.*, 594 N.W.2d 357, 362 (S.D. 1999).

"[O]ne of the most fundamental rights belonging to a religious institution" is the "choice of individuals to serve as ministers." *Ayon v. Gourley*, 47 F.Supp.2d 1246, 1250 (1998). "It is one of the most important exercises of a church's freedom from government control." *Id.* "[A]ny inquiry into the decision of who should be permitted to become or remain a priest necessarily would involve prohibited excessive entanglement with religion." *Isely v. Capuchian Province*, 880 F.Supp. 1138, 1150 (E.D. Mich. 1995).

Applying these principles, many courts throughout the country have recognized that they are constitutionally barred from adjudicating negligence claims based upon the hiring, retention or supervision of clergy.[6]  For example, in *Gibson v. Brewer*, 952 S.W.2d 239, 247 (Mo. 1997), the Missouri Supreme Court held that courts have no jurisdiction over claims of negligent hiring, ordination, retention or supervision by a religious institution of its clergy.  The court held that questions regarding hiring, ordination, retention and supervision of clergy "necessarily involve interpretation of religious doctrine, policy and administration" and would create an excessive entanglement between church and state as a matter of law.  *Id.* at 246-247.

The same constitutional difficulty exists here.  In order to adjudicate Joseph's negligence claim, the Court would be required to evaluate (1) the reasonableness of the Defendants' policies and procedures for selecting, training and supervising its

---

[6] *See, e.g., Avon*, 47 F.Supp.2d at 1249-51 (dismissing claims for negligent hiring and supervision of clergy); Isely, 880 F.Supp. at 1150 (dismissing negligent hiring claim); *Wende C. v. United Methodist Church*, 776 N.Y.S.2d 390 (App Div. 4th Dep't 2004) (dismissing negligent hiring claim); *J.M. v. Minnesota Dist. Council of Assemblies of God*, 658 N.W.2d 589 (Minn. Ct. App. 2003) (negligent hiring claim barred by First Amendment);  *L.L.N. v. Clauder*, 209 Wis.2d 674, 563 N.W.2d 434 (1997) (claim for negligent hiring of priest constitutionally barred); *Swanson v. Roman Catholic Bishop of Portland*, 692 S.2d 441 (Me. 1997) (First Amendment and Maine Constitution bar claim for negligent supervision of clergy).

missionaries; and (2) what those in a position to supervise White "should have known" concerning White and his alleged abuse of Joseph.  This would amount to an impermissible adjudication of the reasonableness of Defendants' relationship with their missionaries which "necessarily involve[s] interpretation of religious doctrine, policy and administration."  *Id.* at 246-47.  As recognized in *Gibson*, such inquiry would create an excessive entanglement, inhibit religion, and result in the endorsement of one model of supervision, in effect establishing one religion's mode of operation over others.  *Id.*

The First Amendment and the South Dakota Constitution prohibit judicial inquiry into the reasonableness of the Church's selection and supervision of missionaries.  This Court therefore lacks jurisdiction over Joseph's negligence claim and the motion for summary judgment should be granted.

## 2.   Joseph's Negligence Claim Fails Because He Cannot Establish That Defendants Owed Him Any Legal Duty.

In any action for negligence, the plaintiff must establish that (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant failed to perform that duty; and (3) the defendant's failure proximately caused injury to the plaintiff.  *State Auto Ins. Cos. v. B.N.C.*, 702 N.W.2d 379, 386 (S.D. 2005).  The existence of a duty is a question of law for the Court.  *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D.1993) (citation omitted).  Summary judgment is appropriate where no duty exists as a matter of law.  *Id.*

"Generally, the law imposes no duty to prevent the misconduct of a third person." *Walther v. KPKA Meadowlands Ltd. Partnership*, 581 N.W.2d 527, 531 (S.D. 1998). South Dakota law recognizes a narrow exception to this general rule if two "essential elements" are present: "(1) the existence of a special relationship between the parties

and (2) a finding that wrongful activity is foreseeable." *State Auto Ins.*, 702 N.W.2d at

387.  Here, neither element is present.

### a.   The Law Does Not Recognize a Fiduciary Relationship Between a Church and its Members Based Upon Religious Teachings or Faith.

Joseph attempts to establish the "special relationship" element by alleging that

the Church owed him the duties of a fiduciary by virtue of his membership in the

Church.  Specifically, Joseph alleges that he placed "trust and confidence" in the

Church and that he looked to the Church and to White for "counseling and guidance."

(Complaint, Doc. 1, ¶¶ 17-18.)

The Church's missionaries (including Robert White) are unpaid volunteers that

pay their own expenses while on mission.  Their sole purpose for being on a mission is

to spread the religious teachings and faith of the Latter-day Saints Church.

(Reeve Affidavit ¶ 17.)

Courts throughout the country have refused to recognize the existence of a

fiduciary relationship between a religious organization and its members based solely on

religious teachings or faith.  *See, e.g., Meyer v. Lindala*, 675 N.W.2d 635, 640 (Minn.

App. 2004) ("Providing faith-based advice or instruction, without more, does not create a

special relationship."); *Richelle L. v. Roman Catholic Archbishop of San Francisco*, 106

Cal.App.4th 257, 279 (2003) (the law does not recognize a fiduciary duty based upon

religious belief or practice); *Bryan R. v. Watchtower Bible & Tract Society of New York*,

738 A.2d 839, 847 (Me. 1999) (declining to recognize "an amorphous common law duty

on the part of a church . . . to protects its members from each other").

In *Richelle L.*, a pastor with a known "propensity for breaking his vows of

celibacy" seduced a parishioner he knew was "deeply religious."  He knew that her

"religious faith and trust" compromised her judgment; therefore, she was "readily subject to manipulation and control by a pastor."  Moreover, the Archdiocese knew of past misconduct; thus, employing the pastor to occupy a position of power and influence "created an unreasonable risk of harm."  106 Cal.App.4th at 264-65.  Despite these egregious facts, the court sustained a demurrer to the claim for breach of fiduciary duty.

*Richelle L.* held that a claim for breach of fiduciary duty against a church is viable only if the claim can be adjudicated without reference to religious facts.  The law simply does not recognize a claim where the alleged fiduciary duty is based upon the plaintiff's faith or religious belief.  *Id.* at 279.  Any other rule would violate the First Amendment because it would inject the court into purely religious questions:

> In order to consider the validity of plaintiff's claims of dependency and vulnerability [based upon "religious facts"], the jury would have to weigh and evaluate, *inter alia*, the legitimacy of plaintiff's beliefs, the tents of the faith insofar as the reflect upon a priest's inability to act as God's emissary and the nature of the healing powers of the church.  To instruct a jury on such matters is to venture in to forbidden ecclesiastical terrain . . . .

*Id.* at 281-82 (quoting *Langford v. Roman Catholic Diocese of Brooklyn*, 677 N.Y.S.2d 436, 439 (1998).

Here, as in *Richelle L.*, Joseph's allegations of fiduciary duty present "a factual question that cannot be addressed in secular terms."  *Id.* at 280.  First, Joseph fails to allege the existence of a secular relationship with White or any representative of the Church.  Second, and more critically, instead of alleging that he was vulnerable to White or to the Church for a secular reason, Joseph alleges that he and his parents "trusted White completely" because of his status as an Elder and because he "had come to them under the imprimatur and aegis of the Church" and that he had been "taught and trained to respect the Elders and follow their direction."  (Complaint, Doc. 1, ¶ 9.)

In sum, Joseph's claim that the Church owed him a fiduciary duty cannot be evaluated without a constitutionally impermissible examination of "the nature and depth of [his] religious faith" and its basis in the teachings and doctrines of the Church.  *Id.* at 281-82.  In the absence of a legally recognizable duty, Joseph is legally barred from pursuing a claim against the Church for failure to warn or protect him from the abuse alleged in the Complaint.

### b.   There Is No Evidence That The Alleged Abuse Was Foreseeable

A defendant cannot be liable in tort for failing to warn or protect another unless the defendant knew or should have known of a foreseeable danger.  *E.P. v. Riley*, 604 N.W.2d 7, 16 (S.D.1999).  Joseph's negligence claim fails because he cannot produce any evidence to suggest that the Church could have foreseen the abuse alleged in the Complaint.

There is no evidence that the Church was aware of facts that would make White's alleged abuse of Joseph foreseeable.  Even Melvin Taylor and Jay Larson who were White's companions for the entire time he was in South Dakota were unaware of any facts to suggest that White might be a danger to Joseph or that any sexual abuse had, in fact, occurred.  (Taylor Depo. at 43:9-44:25, 90:8-12; Larson Depo. at 95:24-96:2, 103:7-13.)  Indeed, Joseph admits that he does not know of any facts to support his claims that the Church had any knowledge.  (Ferris Joseph Depo. at 106:8-107:4; 103:25-104:17.)

To hold Defendants liable for the alleged allegations would be tantamount to holding that churches are now strictly liable for all acts of church volunteers.

Given the lack of evidence of a foreseeable risk, Joseph cannot satisfy the requisite duty element of his negligence claims.  Simply put, the Church could not have foreseen the abuse that Joseph alleges. The Church is therefore entitled to summary judgment.

## CONCLUSION

For each of the foregoing reasons, the Church respectfully requests that the Court grant its motion for summary judgment.

Dated this _____ day of November, 2007.

McMAHON LAW OFFICE, P.C.

James E. McMahon
101 North Phillips Avenue
Wells Fargo Building, Suite 408
Post Office Box 2554 (mailing address)
Sioux Falls  SD  57101-2554
605-332-5606 – telephone
605-331-6473 – fascimile
jim@mcmahonlawpc.com

Jonathan A. Kobes
MURPHY, GOLDAMMER
   & PRENDERGAST, L.L.P.
101 North Phillips Avenue
Wells Fargo Building, Suite 402
Post Office Box 1535 (mailing address)
Sioux Falls  SD  57101-1535
605-331-2975 – telephone
605-331-6473 – facsimile
jon@mgplawfirm.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on _____ day of November, 2007, I electronically filed the foregoing *Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints' Memorandum in Support of Motion for Summary Judgment* with the Clerk of Court using the CM/ECF which upon information and belief will provide electronic notification of such filing to:

Stephanie E. Pochop
Johnson Eklund Law Office
Post Office Box 149
Gregory, SD  57533
sechops@hotmail.com
johnson@gwtc.net

Jeffrey M. Herman
Stuart S. Mermelstein
Adam D. Horowitz
Herman & Mermelstein
18205 Biscayne Boulevard, Suite 2218
Miami, Florida 33160
ahorowitz@hermanlaw.com

James E. McMahon