**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| FERRIS JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO: 06-4143** |
| | ) | |
| v. | ) | |
| | ) | |
| CORPORATION OF THE PRESIDENT | ) | |
| OF THE CHURCH OF JESUS CHRIST OF | ) | PLAINTIFF'S MEMORANDUM |
| LATTER DAY SAINTS, a Utah corporation | ) | IN OPPOSITION TO MOTION |
| sole, and CORPORATION OF THE | ) | FOR SUMMARY JUDGMENT |
| PRESIDING BISHOP OF THE CHURCH | ) | |
| OF LATTER-DAY SAINTS, a Utah | ) | |
| corporation sole, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMES NOW, Plaintiff Ferris Joseph, by and through undersigned counsel, and submits this Memorandum of Law in Opposition to the Motion for Summary Judgment of Defendants Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints (collectively, the "Church" or the "LDS Church").

## **INTRODUCTION**

Plaintiff Ferris Joseph alleges that he was sexually abused by a missionary of the Church, Robert White, in 1968. He repressed memories of this sexual abuse until in or about October, 2004, when he was visiting his sister in Alberta, Canada, and recovered his memories of the abuse.

Defendants' Motion for Summary Judgment as to the statute of limitations must be denied. Plaintiff's claim is governed by SDCL §26-10-25, which provides that victims of childhood sexual abuse may bring a civil action within three years of the time the victim

discovered or reasonably should have discovered that the injury or condition was caused by the act. Plaintiff has timely filed suit within this three-year period. Defendant's contention that Plaintiff's claim is not governed by §26-10-25 is incorrect based on the language of §26-10-25 and the policy reasons set forth in <u>Delonga v. Diocese of Sioux Falls</u>, 329 F.Supp. 1092 (D.S.D. 2004). Additionally, the Supreme Court of South Dakota has held that SDCL §26-10-25 was intended to apply retroactively to abuse that occurred before the statute was enacted. <u>See Stratmeyer v. Stratmeyer</u>, 567 N.W.2d 220 (S.D. 1997).

The First Amendment does not shield the Defendants from liability in this negligence action. The core inquiry in determining whether the Church Defendants are liable will focus on whether they reasonably should have foreseen the risk of harm to the Plaintiff. This is a neutral principle of tort law. The First Amendment is not implicated in that the adjudication of this matter does not require "excessive" entanglement in internal church matters or interpretation of religious doctrine or ecclesiastical law.

Finally, the Church alleges that the Defendants owed no duty to the Plaintiff, and that there is no evidence to show that the sexual abuse of the Plaintiff was foreseeable. Under South Dakota law, where a party has the ability or right to control a third person, a duty exists to take reasonable steps to prevent foreseeable harm from that person. Here, there is ample evidence in the record that the Church had the ability and right to direct, supervise and control the missionaries in their charge, including Robert White. Additionally, the record demonstrates that the Church had notice and knowledge that Robert White was a danger to minors, including information that White had raped a minor in California before he became a missionary. The record, viewed as the Court must in the light most favorable to Plaintiff, amply demonstrates that the Church could have exercised reasonable care to prevent the sexual abuse of the Plaintiff, and

failed to do so.  Accordingly, the Defendants' arguments regarding duty and foreseeability fail to support the drastic remedy of summary judgment in this case.

**BACKGROUND AND RELEVANT FACTS**

The facts pertinent to Defendants' Motion for Summary Judgment are set forth in detail in Plaintiff's Statement of Disputed Material Facts, at § B, pp. 5-11.  These facts are briefly summarized as follows:

1.      Robert Lewis White was appointed by the Church to be a missionary for a two-year term beginning in 1967.  His purpose in becoming a missionary was to avoid the military draft to the Vietnam War. Robert White was given the title of "Elder" and assigned to the Northern Indian Mission, which includes the State of South Dakota and other surrounding States. He was assigned at first to the Lake Andes/Wagner area, and then transferred in or about April, 1968 to Flandreau, South Dakota.  (Plaintiff's Statement of Disputed Material Facts, § B, ¶¶ 1-3).

2.      While stationed in Flandreau, Robert White traveled to Sioux Falls and interacted on a number of occasions with the Joseph family.  He spent a significant amount of time with the Joseph family, and groomed their three young boys, including Ferris, then age 12, by taking them out for treats and activities.  Robert White took the boys to the missionaries' apartment in Flandreau, where he sexually abused Ferris.  Robert White's missionary service terminated in July, 1968 after approximately nine months, well short of his two-year missionary commitment. (Id., § B, ¶¶ 4-6).

3.       Ferris Joseph suffered various psychological and social problems throughout his life, but had no recollection having been sexually abused until visiting his sister, Vickie, a devout Mormon, in Alberta, Canada in or about October, 2004.  Ferris Joseph immediately contacted the

LDS Church in Alberta, Canada.  The LDS Church eventually identified Robert Lewis White as the missionary whom Plaintiff alleged sexually abused him in 1968.  (Id. § B, ¶¶ 20-21).

4.     The Church appoints missionaries, assigns them to a particular mission, gives them instruction and standards of conduct, and monitors and exercises control over their activities in the missionary field.   The missionaries typically establish close personal relationships with their constituents.   The record demonstrates the Church's supervisory hierarchy over missionaries, and the elements of supervision and control exercised by the Church.   (Id. § B, ¶¶ 8-12).

5.     The record demonstrates that Robert White was a problem missionary throughout his short tenure.  Among other things, White's missionary supervisor, Jay Sessions, was advised in February, 1968 that White was accused of raping a minor girl in San Francisco prior to becoming a missionary.  The record overall demonstrates that White had a propensity to engage in criminal conduct, including sexual conduct with minors, which was known or should have been known to the Church. Despite this notice and knowledge, White was transferred to Flandreau where the Church knew he would be in close contact with minors.  There, in the missionaries' apartment, he sexually abused the Plaintiff. (Id., § B, ¶¶ 13-19).

<u>**Argument**</u>

## I.     DEFENDANTS CANNOT MEET THEIR HEAVY <u>BURDEN ON A MOTION FOR SUMMARY JUDGMENT</u>

The Eighth Circuit Court of Appeals has repeatedly emphasized the drastic nature of the summary judgment remedy. It should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy. See <u>Snell v. United States</u>, 680 F.2d 545, 547 (8th Cir. 1982); <u>Jackson v. Star Sprinkler Corp.</u>, 575 F.2d 1223, 1226 (8th Cir. 1978); <u>New England Mutual Life Insurance Co. v. Null</u>, 554 F.2d 896, 901 (8th Cir.

1977). The evidence must be viewed in the light most favorable to the nonmoving party. The court also must give the nonmoving party the benefit of all reasonable inferences to be drawn from the facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  As discussed herein, and as set forth in Plaintiff's Statement of Disputed Material Facts, Defendants cannot meet this heavy burden.

## II.      PLAINTIFF'S LAWSUIT IS NOT BARRED BY THE STATUTE OF LIMITATIONS UNDER SOUTH DAKOTA LAW

The substantive law of South Dakota, including its statute of limitations, governs this diversity action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Pecoraro v. Diocese of Rapid City, 435 F.3d 870 (8th Cir. 2006) (applying SDCL §26-10-25 in diversity action brought in South Dakota against Catholic Diocese arising from childhood sexual abuse by a priest). Defendants assert that Plaintiff's claim is time-barred because SDCL §26-10-25 is inapplicable to the present action, or alternatively, that it would be unconstitutional to retroactively enforce SDCL §26-10-25.[1]   In doing so, Defendants fail to acknowledge that all of the Defendants' arguments in this case were addressed by the South Dakota Supreme Court in Stratmeyer v. Stratmeyer, 567 N.W.2d 220 (S.D. 1997), or are contrary to the plain language used by the South Dakota legislature in SDCL §26-10-25.

---

[1] Notably, Defendants do not dispute in the Motion for Summary Judgment that Plaintiff has in fact commenced his action within three years of the time that Plaintiff discovered or reasonably should have discovered that his injuries or condition was cause by childhood sexual abuse.

5

###### A.       SDCL § 26-20-25 Applies to Negligence Claims<br>Based on Intentional Sexual Abuse of Children

SDCL §26-10-25, which is titled, "Time limit on civil action **arising out of sexual abuse of child**", provides:

> **Any civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse** shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later. (Emphasis supplied).

Defendants ask this Court to narrowly interpret §26-10-25 by finding that this "date of discovery" statute of limitations applies only to intentional tort claims against the actual perpetrator of the sexual abuse and not against other parties whose liability may arise from the sexual abuse committed by the perpetrator.   The interpretation urged by Defendants is inconsistent with the plain language of the words and phrases used by the South Dakota legislature in §26-10-25, as well as fundamental principles of statutory construction and the policy considerations underlying the enactment of the statute.

This precise issue was previously addressed in this Court in a clergy sexual abuse in Delonga v. Diocese of Sioux Falls, 329 F.Supp. 1092 (D.S.D. 2004) (Piersol, C.J.).   After considering the plain meaning of SDCL §26-10-25, the Court concluded that the statute encompassed negligence actions based on an underlying sexual assault. 329 F.Supp. at 1102. Similarly, the Eighth Circuit Court of Appeals recently recognized in Pecoraro v. The Diocese of Rapid City, 435 F.3d 870 (8th Cir. 2006), that SDCL §26-10-25 should be applied to a vicarious liability claim against a religious organization.   The statute's scope is therefore not limited to claims against intentional tortfeasors for intentional conduct.

The rationale employed in Delonga should be applied in this case.   The Court reasoned

that principles of statutory construction adopted by the South Dakota Supreme Court require that "the words and phrases in a statute must be given their plain meaning and effect", and that the dictionary definition of the statute's "based on" language could not be ignored.  Id. at 1004; see also Pete Lien & Sons, Inc. v. City of Pierre, 577 N.W.2d 330 (S.D. 1998); M.B. v. Konenkamp, 523 N.W.2d 94 (S.D. 1994).  The analysis of the statute in the Delonga decision borrowed heavily from the reasoning used in an out-of-state decision cited by the Defendants in this case, Sandoval v. Archdiocese of Denver, 8 P.3d 598 (Colo. App. 2000), wherein that Court observed that the literal meaning of "based on", together with the phrase "any civil action based on a sexual offense", includes a cause of action for negligence against someone other than the perpetrator that is based on sexual abuse.  The same rationale should be applied here where the statute uses the phrase *"[a]ny civil action based on* intentional conduct…"  The only rational basis for the inclusion of the phrase "*any civil action based on"* is that the legislature intended for the statute to encompass claims beyond simply intentional tort claims against the abuser.  In a negligence action such as in this case, the claim against the Defendants is *"based on"* sexual abuse in that the sexual abuse is the foundation and underlying fact without which no claim could exist.  Moreover, in the present circumstances where it is alleged that the Defendants knew or should have known of the perpetrator's dangerous sexual propensities before the Plaintiff was abused, the failure to address the problem precedes the abuse, but it is the abuse itself that is the "base" or "starting point" of the events giving rise to the negligence claim.

It is well-settled under South Dakota law that the intent of the legislature may be construed from an act's title even though the title is not part of the act itself. State v. I-90 Truck Haven Service, Inc., 662 N.W.2d 288, 291 (S.D. 2003); LaBore v. Muth, 473 N.W.2d 485, 488 (S.D. 1991).  Section 26-10-25 is titled "Time Limit on civil action *arising out of* sexual abuse of

a child." It cannot be reasonably denied that Plaintiff's claim arises from sexual abuse, and it is evident from this title that the South Dakota legislature intended to enact a "date of discovery" statute of limitations that was not limited to claims against only the perpetrator. Thus, SDCL §26-10-25 encompasses the Plaintiff's claim for negligence based on childhood sexual abuse. Even if this Court were to find, however, that there are two plausible interpretation of §26-10-25, Defendants' argument for a restrictive interpretation must nevertheless be rejected in that the Supreme Court held in <u>Stratmeyer</u> and <u>Richards v. Lenz</u>, 539 N.W.2d 80 (S.D. 1995) that "if there is any doubt as to which statute [of limitations] applies, such doubt should be resolved in favor of the longer limitations period."

As explained in <u>Delonga</u>, the focus of SDCL §26-10-25 is to provide a remedy for "a particular type of harm, not on the nature of the party or parties causing the harm." 329 F.Supp.2d at 1104. Thus, the conclusion that SDCL §26-10-25 should not be narrowly interpreted so as to render all but the perpetrator immune from suit is entirely consistent with the decisions of the South Dakota legislature that victims of childhood sexual abuse require additional time and protections to seek vindication.

**B.      The Supreme Court of South Dakota Has Held
That SDCL § 26-20-25 Applies Retroactively to
<u>Sexual Abuse Which Occurred Before it was Passed</u>**

In <u>Stratmeyer v. Stratmeyer</u>, 567 N.W.2d 220 (S.D. 1997), the Supreme Court of South Dakota held that the discovery statute of limitations in SDCL § 26-10-25, which was enacted in 1991, applies retroactively to childhood sexual abuse which occurred before the passage of the statute. In the ten years since the <u>Stratmeyer</u> case, the decision has been undisturbed and the South Dakota Supreme Court has not receded from its analysis of SDCL § 26-10-25. Additionally, since the <u>Stratmeyer</u> decision, the South Dakota legislature has declined to amend

or otherwise act to change this interpretation.[2]

As set forth above, South Dakota substantive law, including its statute of limitations, governs this decision.  It is only when the South Dakota Supreme Court has not decided an issue that this Court is obligated to determine what the Supreme Court "would probably hold if it were to decide the issue…" Anderson v. Nissan Motor Co., 139 F.3d 599, 601 (8th Cir. 1998).  In this instance, there is no need for 'guesswork' as this Supreme Court of South Dakota has unequivocally addressed this legal issue.

The retroactive application of SDCL § 26-10-25 has been the subject of rather exhaustive consideration by the South Dakota Supreme Court.  In 1995, the South Dakota Supreme Court initially determined that SDCL § 26-10-25 would not apply retroactively to incidents of abuse occurring before its enactment in 1991.  Koenig v. Lambert, 527 N.W.2d 903, 904 (S.D. 1995).  The Koenig decision was not predicated on a finding that the retroactivity in SDCL §26-10-25 authorizing previously-barred civil claim would run afoul of the Defendant's due process rights.  Instead, the Court merely held that SDCL §26-10-25 did not contain a clear expression of legislative intent to be retroactive.[3]  However, the South Dakota Supreme Court expressly overturned that decision on August 28, 1997, holding that SDCL § 26-10-25 shall apply retroactively to "all acts" of abuse occurring before 1991.  Stratmeyer, 567 N.W.2d at 220.

The South Dakota Supreme Court reasoned in Stratmeyer that "[s]tatutes are to be looked

---

[2] Considering the legislature's apparent acceptance of the Stratmeyer decision since 1997, Justice Miller's dissent in Stratmeyer is somewhat turned on its head as he asserted, in part, that the legislature's failure to act in the two years after the Koenig decision demonstrated the legislature's approval of the Koenig Court's decision.  Stratmeyer, 567 N.W.2d at 225 (Miller, C.J., dissenting).

[3] Thus, even Koenig implies that retroactivity of a statute of limitations would not violate a defendant's due process.  Accordingly, Defendants' contention that the Stratmeyer decision is "aberrant" or isolated in this regard is not only based on flawed analysis but is factually incorrect.

at as a whole, along with any enactment relating to the same subject when determining the intent of a statute. 567 N.W. 2d at 223; see also Kayser v. South Dakota State Elec. Com'n, 512 N.W.2d 746, 747 (S.D. 1994).  SDCL §§ 26-10-25 through 29 were passed as a whole in 1991. See 1991 SD Session Laws, ch. 219 §§ 1-5, at 328.  Indeed, SDCL § 26-10-29, which defines "childhood sexual abuse", expressly references SDCL § 26-10-25 as follows:

> As used in §§ 26-10-25 to 26-10-29, inclusive, childhood sexual abuse is any act committed by the defendant against the complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 22-22 or prior laws of similar effect at the time the act was committed which act would have constituted a felony.

As a matter of statutory construction, the Supreme Court held in Stratmeyer that ". . . [I]f retroactive impact is clearly intended for some of the provisions of . . . an act, it seems logical to assume that the legislature intended retroactive impact for them all."  567 N.W.2d at 223 (citations omitted).  By referring to "chapter 22-22 or prior laws of similar effect *at that time the act was committed*," SDCL § 26-10-25 clearly indicates the legislature's intention for retroactive application.  As the Stratmeyer Court explained:

> If the Legislature did not intend the statute to apply to all acts, there would be absolutely no reason to incorporate violations of chapter 22-22 and to incorporate by reference "prior laws of similar effect."  Chapter 22-22 did not go into effect until 1967.

Stratmeyer, 567 N.W.2d at 223.

Noting that Ch. 22-22 has Penal Code of 1877 as its original source, the Court added, "If the Legislature had only intended SDCL 26-10-25 to apply to future acts of childhood sexual abuse, it would have simply defined the term and not incorporated by reference SDCL Ch. 22-22 or prior laws of similar effect.  Therefore, the Legislature obviously intended SDCL 26-10-25 to apply to this case." Stratmeyer, 567 N.W.2d at 223.  Thus, the rebuttable "presumption against

10

the retroactive effect and in favor of prospective construction only" which Defendants rely upon is easily overcome in SDCL §26-10-25.  In the context of this legislative package, retroactive application of SDCL § 26-10-25 also meets the requirement of SDCL §2-14-21 which provides that "[n]o part of the code...  shall be construed as retroactive unless such intention plainly appears."

Stratmeyer also recognized that courts may look to the public policy to be furthered by retroactive application of the limitations period.  567 N.W.2d at 224 (citation omitted).  In South Dakota, the Legislature has resolutely protected victims of sexual abuse both by criminal statutes and by civil remedies, particularly when the victims are children.  See e.g., SDCL §§ 22-22-1.2 through 22-22-7.5; SDCL § 26-10-1.  Recognizing the difficulty that many victims have difficulty processing their injuries through layers of repressed memories and/or shame and humiliation, particularly when the perpetrator is a trusted authority figure, SDCL § 26-10-25 specifically provides victims with a remedy to establish responsibility in actions based on childhood sexual abuse.  Declaring that our legislature, as the final arbiter of public policy has clearly established South Dakota's public policy in favor of assisting the victims of childhood sexual abuse, the Stratmever Court described the plight of many childhood sexual abuse victims:

> Imagine being pricked on the arm with a pin.  At first, such an intrusion would be disturbing, but with time might even seem uneventful. Now imagine the pin carried a dreaded affliction, only discoverable after years of incubation.  Such is often the nature of childhood sexual abuse.  Many children only realize years later the true significance of the abuse they endured, especially in cases where the molestation occurred at the hands of family members or other trusted individuals.  For some children, sexual violation is so traumatic it becomes psychologically self-concealing, if only to preserve sanity.  For this reason, our Legislature enacted SDCL 26-10-25 creating a discovery rule for adult survivors of child sex abuse.  This statute was intended to be retroactive. See Koenig v. Lambert, 527 N.W.2d 903, 907 (S.D. 1995) (Sabers, J., concurring in part and dissenting in part).  Although I agree … that fraudulent

> concealment is inapplicable to the circumstances of this case and thus cannot toll an otherwise expired limitations period, plaintiffs nonetheless have a viable cause of action; SDCL 26-10-25 extended their time for filing because the jury found they "discovered", within the enlarged period, the injuries they suffered.

Stratmeyer, 567 N.W.2d at 223.  Put yet another way, "[s]exual abuse at an early age prompts involuntary coping mechanisms which may prevent victims from making the causal connection between the abuse they suffered as children and the psychological problems they experience as adults."  Id. at 224.  In this case, the Plaintiff suffered from a repressed memory.  He had no memory of being sexually abused as a child until 2004 when he was visiting his sister in Alberta, Canada. (Statement of Disputed Material Facts, § B, ¶ 20).

Considering the traumatic effect that sexual abuse often has on its victims, the Stratmeyer Court flatly rejected the policy justification for applying a statute of limitations to protect defendants from the threat of liability for deeds in the past as "unpersuasive"'; it further recognized that "the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions."  Id. citing Hammer v. Hammer, 418 N.W.2d 23, 27 (Wis. Ct.App 1987); Osland v. Osland, 442 N.W.2d 907, 909 (N.D. 1989) (affirming trial court's application of discovery rule where "the severe emotional trauma experienced by [plaintiff] resulted in her being unable to fully understand or discover her cause of action during the applicable statutory limitations period."); Ann Marie Hagen, Note, Tolling the Statute of Limitations for Adult Survivors of Childhood Sexual Abuse, 76 Iowa L. Rev. 355 (1991) (calling for statutory reform and pointing out that these adult survivors of child sexual abuse are "blamelessly ignorant" of their injuries and should not be re-victimized by allowing their abuser to hide behind a statute of limitation).  Thus, the Defendants in this action are also incorrect in asserting that this case presents a vivid example of why statutes of limitations must

be strictly enforced.  In fact, the opposite is true.  Common sense dictates that a claim cannot be brought (and the statute of limitations should not expire) until a plaintiff is aware of the underlying facts supporting liability.  To find otherwise would yield an inequitable result.

In Gross v. Weber, 112 F.Supp.2d 923 (D.S.D. 2000), neither the retroactive language of SDCL 26-10-29 nor the Stratmeyer Court's holding that SDCL 26-10-25 applied to *all acts* of intentional sexual abuse of children was addressed by the Court.  Instead, the Court analyzed this issue in the context of South Dakota cases which involved amendments to existing statutes of limitations:  State ex rel. Hove v. Does, 501 N.W.2d 366 (S.D. 1993); State By and Through Dept. of Social Services ex rel. Dotson v. Serr, 506 N.W.2d 421, 423 (S.D. 1993), and Barrow v. Bladow, 521 N.W.2d 141, 143 (S.D. 1994).  All three of these cases involved various amendments to extend the statute of limitations that applied to paternity actions under SDCL §25-8-9.  Specifically, in considering an argument that an amendment to the paternity statute should be retroactively applied, the Hove Court stated:

> [T]he state legislature which creates a statute of limitations may not enact a statute that retroactively revives a cause of action already barred by the statute of limitations.  When a right to sue has expired under the applicable statute of limitations prior to the effective date of a new and longer statute, the new limitations period cannot revive the expired cause of action.  Amendments extending the time of a filing of a lawsuit will not be applied retroactively to revive causes of action previously barred.

Hove, 501 N.W.2d at 370 (emphasis added).  The analysis used in each of the cases relied upon in Weber refer to amendments to an existing statute of limitations.  See e.g., West v. John Morrell & Co., 460 N.W.2d 745 (S.D. 1990) (where a 1980 amendment which enlarged the limitations period in a worker's compensation claim that had previously expired under the statutes was not applied retroactively).

However, SDCL § 26-10-25 and SDCL § 26-10-29 were not amendments or "revival"

13

statutes:  these were new laws passed in 1991.  The following is the generally accepted rule

regarding new statutes:

> Although a legislature may not revive a cause of action that has
> been barred by a statute of repose, it does have the power to revive
> an action that has been barred by the statute of limitations if it
> specifically expresses its intent to do so through the retroactive
> application of a new law, because there is no vested right or
> constitutionally protected property interest in the passage of a
> statute of limitations.

51 Am Jur.2d Limitations of Actions § 50 (citations omitted).

The U.S. Supreme Court has also repeatedly upheld the retroactive extension of statutes

of limitations in the face of constitutional challenges.  See e.g., Chase Securities Corp. v.

Donaldson, 325 U.S. 304, 314 (1945) ("Statutes of limitation find their justification in necessity

and convenience rather than in logic . . . Their shelter has never been regarded as what is now

called a 'fundamental' right"); International Union of Electrical, Radio, and Machine Workers v.

Robbins & Meyers, Inc. 429 U.S. 229, 243 (1976) (holding that Congress has the "constitutional

power to revive, by enactment, an action which, when filed, is already barred by the running of a

limitations period"); see also Plaut v. Spendthrift Farm, Inc., (1995) 514 U.S. 211, 229

(recognizing that civil statutes of limitation "can be extended, without violating the Due Process

Clause, after the cause of action arose and even after the statute itself has expired").

Simply stated, civil statutes of limitations do not create a protected property right in a

civil defendant under federal law.  As such, retroactive revocation of a statute of limitation

defense does not offend the Due Process clause of the United States Constitution.

U.S. Supreme Court authority rejecting due process challenges to retroactive extensions

of civil statutes of limitations goes back to Campbell v. Holt, 115 U.S. 620, 628 (1885).

Campbell held that statutes of limitations do not necessarily give a defendant a property right or

other vested interest, the deprivation of which violates the Due Process Clause. 115 U.S. at 628.

A plaintiff could once have sued without infringing any of defendant's rights, and the mere

passage of time and lapsing of the statute did not change the "nature and character" of plaintiff's

claim. Id. at 627-628.  In enacting a civil statute of limitations, the legislature made a judgment

founded in public needs and public policy, but its judgment was an "arbitrary" one open to

rational reconsideration by the Legislature at a later date.  Id. at 628.  The Court held that "[n]o

right is destroyed when the law restores a remedy which had been lost."  Id.

Sixty years later, the U.S. Supreme Court reaffirmed *Campbell's* authority in Chase

Securities Corp. v. Donaldson, where a unanimous Supreme Court again upheld a retroactive

extension of a civil statute of limitations:

> Statutes of limitation find their justification in necessity and
> convenience rather than in logic.  They represent expedients, rather
> than principles. . . .  They are by definition arbitrary, and their
> operation does not discriminate between the just and the unjust
> claim, or the voidable and unavoidable delay.  They have come
> into the law not through the judicial process but through
> legislation.  They represent a public policy about the privilege to
> litigate.  Their shelter has never been regarded as what now is
> called a "fundamental" right or what used to be called a "natural"
> right of the individual.

325 U.S. at 314.

More recent U.S. Supreme Court authority extends this analysis. In Plaut v. Spendthrift

Farm, Inc., 514 U.S. 211 (1995), the Court recognized that civil statutes of limitations "can be

extended, without violating the Due Process Clause, after the cause of action arose and even after

the statute itself has expired." Id. at 229.  In Electrical Workers v. Robbins & Myers, Inc., 429

U.S. 229 (1976), the Court held that Congress has the "constitutional power to revive, by

enactment, an action which, when filed, is already barred by the running of a limitations

period."[4]  Id. at 243, See also Republic of Austria v. Altman, 541 U.S. 677, 700 (2004); 541 U.S. 677, 700 (2004); Landgraf v. USI Film Prods., 511 U.S. 244-57, 25 (1994).

Based on the foregoing, Defendants' due process argument must be rejected.

### III.    THE FIRST AMENDMENT DOES NOT BAR THIS COURT FROM EXERCISING SUBJECT MATTER JURISDICTION

The Defendants assert that despite the fact that the Plaintiff is alleged to be the victim of a criminal sexual assault, the First Amendment shields the Defendants from tort liability because the inquiry to determine their negligence necessarily implicates church practices and doctrine. This Court should reject the contention that the First Amendment may be invoked to bar the adjudication of this dispute because this case is not an internal church matter.  Rather, this is a dispute involving a child who was horrifically abused as a result of the negligence of the Church.

Notably, the Church Defendants do not cite to the decision of any court in South Dakota in which it was held that a constitutional bar exists to civil claims against a religious organization

---

[4] South Dakota follows the rule recognized in the majority of states, as well as the United States Supreme Court, that changing a civil statute of limitations retroactively is a change in the law that does not violate due process.  See  Schoenrade v. Tracy, 658 N.E.2d 247 (Ohio 1996); Justice v. RMH Aero Logging, Inc., 42 P.3d 549 (Alaska 2002); San Carlos Apache Tribe v. Superior Court ex rel. County of Maricopa, 972 P.2d 179 (Ariz. 1999); Branch v. Carter, 933 S.W.2d 806 (Ark. 1996); Mudd v. McColgan, 183 P.2d 10 (Cal. 1947); Shell Western E&P, Inc. v. Dolores County Bd. of Comm'rs, 948 P.2d 1002 (Colo. 1997); Roberts v. Caton, 619 A.2d 844 (Conn. 1993); Vaughn v. Vulcan Materials Co., 465 S.E.2d 661 (Ga. 1996); Government Employees Ins. Co. v. Hyman, 975 P.2d 211 (Haw. 1999); Henderson v. Smith, 915 P.2d 6 (Idaho 1996); Metro Holding Co. v. Mitchell, 589 N.E.2d 217 (Ind. 1992); Shirley v. Reif, 920 P.2d 405 (Kan. 1996); Kentucky Ins. Guar. Ass'n v. Jeffers ex rel. Jeffers, 13 S.W.3d 606 (Ky. 2000); Lott v. Haley, 370 So. 2d 521 (La. 1979); State v. Stowe, 829 A.2d 1036 (Md. 2003); Leibovich v. Antonellis, 574 N.E.2d 978 (Mass. 1991); Tarnow v. Railway Express Agency, 50 N.W.2d 318 (Mich. 1951); Gomon v. Northland Family Physicians, Ltd., 645 N.W.2d 413 (Minn. 2002); Cosgriffe v. Cosgriffe, 864 P.2d 776 (Mont. 1993); Kratochvil v. Motor Club Ins. Ass'n, 588 N.W.2d 565 (Neb. 1999); Alsenz v. Twin Lakes Village, 843 P.2d 834 (Nev. 1992); Coleman v. United Engineers & Constructors, Inc., 878 P.2d 996 (N.M. 1994); Hymowitz v. Eli Lilly & Co., 539 N.E.2d 1069 (N.Y. 1989); Owens v. Maass, 918 P.2d 808 (Or. 1996); Bible v. Commonwealth, Dep't. of Labor and Industry, 696 A.2d 1149 (Pa. 1997); Jenkins v. Meares, 394 S.E.2d 317 (S.C. 1990); Hill v. Mayall, 886 P.2d 1188 (Wyo. 1994).

arising from an intentional tort committed by an agent of the church against a third-party.[5]   The

overwhelming majority of both state and federal courts conclude that the right to religious

freedom and autonomy protected by the First Amendment is not violated by permitting the courts

to adjudicate tort liability against a religious institution based on a claim that a clergy member

engaged in tortious conduct such as sexual assault and battery in the course of his or her duties.

See Roman Catholic Diocese of Jackson v. Morrison, 905 So.2d 1213 (Miss. 2005); Malicki v.

Doe, 814 So.2d 347 (Fla. 2002); Bear Valley Church of Christ v. DeBose, 928 P.2d 1315, 1323

(Colo.1996); Moses v. Diocese of Colorado, 863 P.2d 310, 314-15 (Colo.1993); Destefano v.

Grabrian, 763 P.2d 275, 283-88 (Colo.1988); Amato v. Greenquist, 679 N.E.2d 446, 450, 454

(1997); Bivin v. Wright, 656 N.E.2d 1121, 1124-25 (Ill. 1995); Konkle v. Henson, 672 N.E.2d

450, 456 (Ind.Ct.App.1996); Mrozka v. Archdiocese of St. Paul and Minneapolis, 482 N.W.2d

806, 812 (Minn.Ct.App.1992); F.G. v. MacDonell, 696 A.2d 697, 702-03 (N.J. 1997); Kenneth

R. v. Roman Catholic Diocese, 229 A.D.2d 159, 654 N.Y.S.2d 791, 795-96 (1997); Langford v.

Roman Catholic Diocese, 271 A.D.2d 494, 705 N.Y.S.2d 661, 662 (N.Y.App.Div.2000); Smith

v. Privette, 128 N.C.App. 490, 495 S.E.2d 395, 398 (1998); Byrd v. Faber, 57 Ohio St.3d 56, 565

N.E.2d 584, 589 (1991); Erickson v. Christenson, 99 Or.App. 104, 781 P.2d 383, 386 (1989);

Martinez v. Primera Asemblea de Dios, Inc., 1998 WL 242412, at *3 (Tex.Ct.App. May 15,

1998); Hawkins v. Trinity Baptist Church, 30 S.W.3d 446, 453 (Texas Ct.App.2000); C.J.C. v.

Corporation of the Catholic Bishop of Yakima, 138 Wash.2d 699, 985 P.2d 262, 277 (1999);

Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409 (2d Cir.1999); Smith v.

---

[5] The Defendants entirely fail to address the decisions in Koenig v. Lambert, 527 N.W. 2d 903
(S.D. 1995), Pecoraro v. Diocese of Rapid City, 435 F.3d 870 (8th Cir. 2006), and Delonga v
Diocese of Sioux Falls, 329 F. Supp. 2d 1092 (D. S.D. 2004), wherein the Court exercised

O'Connell, 986 F.Supp. 73, 80 (D.R.I.1997); Doe v. Hartz, 970 F.Supp. 1375, 1431-32 (N.D.Iowa 1997); Sanders v. Casa View Baptist Church, 898 F.Supp. 1169, 1175 (N.D.Tex.1995); Nutt v. Norwich Roman Catholic Diocese, 921 F.Supp. 66 (D.Conn.1995); Isely v. Capuchin Province, 880 F.Supp. 1138, 1151 (E.D.Mich.1995).

The First Amendment contains two clauses regarding religion -- the Free Exercise Clause and the Establishment Clause.  Before the constitutional right to free exercise of religion is implicated, the threshold inquiry is whether the conduct sought to be regulated was "rooted in religious belief."  Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Further, in order to launch a free exercise challenge, it is necessary "to show the coercive effect of the enactment as it operates against [the individual] in the practice of his religion."  School Dist. v. Schempp, 374 U.S. 203, 223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

If it is demonstrated that the conduct at issue was rooted in religious beliefs, then the court must determine whether the law regulating that conduct is neutral both on its face and in its purpose.  See Lukumi Babalu, Aye v. City of Hialeah, 508 U.S. 520, 531, 113 S.Ct. 2217 (1993). "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest."  Id. at 533, 113 S.Ct. 2217 (citation omitted).

The State may, however, regulate conduct through neutral laws of general applicability. See id. at 531.  Thus, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  Id. at 531, 113 S.Ct. 2217.

As particularly relevant to the analysis of the First Amendment challenge in this case, the

---

jurisdiction over tort claims brought against religious institutions arising from sexual abuse by

Supreme Court has also held that the First Amendment prevents courts from resolving internal church disputes that would require adjudication of questions of religious doctrine.[6]  See Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 708-09, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).   For example, the Supreme Court has stated that "it is not within 'the judicial function and judicial competence' " of civil courts to determine which of two competing interpretations of scripture are correct.  United States v. Lee, 455 U.S. 252, 256, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982).   Intrachurch disputes, however, must be distinguished from disputes between churches and third parties such as the instant case.  As then Chief Justice Rehnquist observed in rejecting the argument by the United Methodist Church that the Free Exercise Clause barred the Court's exercise of jurisdiction in a civil dispute involving a third party:

> In my view, applicant plainly is wrong when it asserts that the First and Fourteenth Amendments prevent a civil court from independently examining, and making the ultimate decision regarding, the structure and actual operation of a hierarchical church and its constituent units in an action such as this.  There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. . . But this Court has never suggested that those constraints similarly apply outside the context of such intraorganization disputes.... [Serbian Eastern Orthodox Diocese and other related cases] are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs.  *Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged.*

General Council on Fin. & Admin. v. California Superior Court, 439 U.S. 1355, 1372-73, 99 S.Ct. 35, 58 L.Ed.2d 63 (1978) (emphasis added).

---

religious officials.

A court thus must determine whether the dispute "is an ecclesiastical one about 'discipline, faith, internal organization, or ecclesiastical rule, custom or law,' or whether it is a case in which [it] should hold religious organizations liable in civil courts for 'purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization.' " Bell v. Presbyterian Church, 126 F.3d 328, 331 (4th Cir.1997) (quoting Serbian E. Orthodox Diocese, 426 U.S. at 713, 96 S.Ct. 2372).

A law establishing standards of conduct does not implicate the Free Exercise Clause unless adherence to those standards interferes with religious belief or activity.   See Lukumi Babalu Aye, 508 U.S. at 532, 113 S.Ct. 2217.  In this case, the Church Defendants do not claim that the underlying acts of its agent in committing sexual assault and battery were governed by sincerely held religious beliefs or practices.   Nor do they claim that the reason they failed to exercise control over their agents was because of sincerely held religious beliefs or practices. Therefore, the Free Exercise Clause is not implicated in this case because the conduct sought to be regulated; that is, the Church Defendants' alleged negligence is not rooted in religious belief. Moreover, even assuming an "incidental effect of burdening a particular religious practice," the Plaintiff's lawsuit is not barred because it is based on neutral application of principles of tort law. See Lukumi Babalu Aye, 508 U.S. at 531, 113 S.Ct. 2217.  Through   neutral   application   of principles of tort law, the Courts must give no greater or lesser deference to tortious conduct committed on third parties by religious organizations than they do to tortious conduct committed on third parties by non-religious entities.

In rejecting a similar First Amendment challenge to a claim for negligent hiring of a clergy member, the Colorado Supreme Court explained:

---

[6] This protection has been referred to as the religious autonomy principle.   See Smith v.

> While claims for illegal hiring or discharge of a minister inevitably involve religious doctrine, that is not the case for a claim of negligent hiring of a minister.   The claim of negligent hiring is brought after an employee has harmed a third party through his or her office of employment.   An employer is found liable for negligent hiring if, at the time of hiring, the employer had reason to believe that hiring this person would create an undue risk of harm to others.   Hence, *the court does not inquire into the employer's broad reasons for choosing this particular employee for the position, but instead looks to whether the specific danger which ultimately manifested itself could have reasonably been foreseen at the time of hiring.*

Bear Valley Church, 928 P.2d at 1323 (citations omitted) (quoting Van Osdol, 908 P.2d at 1132 n. 17) (emphasis added).

The second aspect of the First Amendment religion clause, the Establishment Clause, involves the separation of church and state and prevents the government from passing laws that "aid one religion, aid all religions, or prefer one religion over the other."  Schempp, 374 U.S. at 216, 83 S.Ct. 1560.  The Establishment Clause does not bar this lawsuit because the imposition of tort liability in this case has a secular purpose and the primary effect of imposing tort liability based on the allegations of the complaint neither advances nor inhibits religion.   The core inquiry in determining whether the Church is liable will focus on whether they reasonably should have foreseen the risk of harm to third parties.  This is a neutral principle of tort law.   Therefore, the adjudication of this matter does not require "excessive" entanglement in internal church matters or interpretation of religious doctrine or ecclesiastical law.

## IV.   THE LDS CHURCH OWED A DUTY TO PLAINTIFF

The Defendants contend that they owed no duty to Plaintiff stemming from sexual abuse committed by Robert White because missionaries are unpaid volunteers whose sole purpose is to proselytize religious teachings and faith.  The facts in this case, however, demonstrate that there

---

O'Connell, 986 F.Supp. 73, 76 (D.R.I.1997).

was a duty owed by the Defendants given the LDS Church's right and ability to control its missionaries.

Initially, negligence in hiring, retention or supervision of an employee is recognized and established as a cause of action under South Dakota law.  See Rehm v. Lenz, 547 N.W. 2d 566 (S.D. 1996).   The essential question for determining whether one is to be considered an "employee" under South Dakota law is whether the principal/employer has a right of control. See Egemo v. Flores, 470 N.W. 2d 817, 821 (S.D. 1991).   Whether one is paid wages is not determinative in evaluating the nature of this relationship.  Id.

The South Dakota courts recognize Sections 314 and 315 of the Restatement (Second) of Torts, which set forth a duty to control the conduct of a third person in order to protect another person from harm, where there exists a special relationship.  Hurst v. United States, 739 F.Supp 1377, 1383 (D.S.D 1990).  A special relationship is established where one party has the *ability to control* another.  Id.   In E. P. v. Riley, 604 N.W. 2d 7, 14-15 (S.D. 1999), the issue was whether employees of the South Dakota Department of Social Services (DSS) had a duty to exercise reasonable care to prevent JH, a 14-year old boy, from sexually abusing another minor.   The Court held that the DSS employees had "sufficient control" over JH to establish a common law duty to protect the plaintiff in that case.  Id. at 15.   A sufficient level of control was found to be present to create a duty even though JH had been placed under the immediate care and control of a foster parent at the time of the incident alleged in the case.  Id.   The Court further noted that "DSS employees were given information that should have caused concern about his propensity to harm others."[7]  Id.

Accordingly, whichever way one approaches the issue of duty in this case, the inquiry

---

[7] See discussion in §V infra regarding foreseeability and notice in the present case.

becomes whether there was a right or ability to control the underlying tortfeasor.  Here, the record demonstrates substantial and compelling indicia of the right and ability of the Defendants to control their missionaries.  Initially, missionaries are appointed by the Church's central administration in Salt Lake City, and assigned to a particular mission, in this case the Northern Indian Mission (Plaintiff's Statement of Disputed Material Facts, § B ¶ 7).  They are given directions regarding their conduct while on the mission. They have policies and procedures, and an established hierarchy, all designed to monitor and control the activities of the missionaries in the field.  At the same time, the missionaries have close and intimate social contacts with their constituent families in the regular course and scope of their missionary activities.  Like any employer, the Defendants have the ability to transfer and terminate missionaries.  (Id., § B, ¶¶ 8-9).

These facts demonstrate an ability and right of control amply sufficient under South Dakota law to establish a duty.  The record demonstrates that Robert White closely interacted with the Joseph family, and groomed Ferris and his brothers within the course of his missionary functions and activities. Ferris looked up to missionaries, including Elder White, as authority figures and mentors.  (Id., § B, ¶ 4).  Defendants were required to exercise reasonable care in control of their missionaries to protect vulnerable minors like Plaintiff.  This duty by no means requires that this Court delve into questions of religious faith or teachings of the Church.  The Church's right and ability to control Robert White while he served as a missionary, and their exercise of supervision, direction and control through policies and procedures and a supervisory hierarchy, all concern only the neutral application of law.  These issues arise in a context no different than that of any secular employer or organization.  Accordingly, the duty owed by the Defendants in this case does not implicate First Amendment concerns.

Based on the foregoing, the Defendants owed a duty in negligence to exercise reasonable care to prevent sexual abuse of a constituent minor by its missionary, Robert White.  There is accordingly no basis for summary judgment on Plaintiff's negligence claim.

## V.    THERE IS AN ISSUE OF FACT REGARDING WHETHER THE SEXUAL ABUSE OF PLAINTIFF BY ROBERT WHITE WAS FORESEEABLE

"Forseeablity is ordinarily a question of fact."  <u>Small v. McKennan Hospital</u>, 403 N.W. 2d 410, 412-413 (S.D. 1987).  "The duty to foresee a risk of harm is dependent upon all of the surrounding facts and circumstances and may require further investigation or inquiry before action is taken."  <u>Id</u>.  It is a tall order to establish that there is not genuine issue of material fact under this "totality of the circumstances" test, and the Defendants fail to do so here.

The record in this case demonstrates the following facts pertinent to the issue of foreseeability:

- Jay Sessions, an Assistant to the  Mission President, was advised of various facts bearing on Robert White's unfitness for duties involving minors and his dangerous propensities toward criminal conduct, including an accusation that Robert White had raped a minor girl in San Francisco before leaving for the mission.  (Plaintiff's Statement of Undisputed Facts, § B ¶¶ 15-17).

- Jay Sessions was provided this information before Robert White was transferred to Flandreau, South Dakota, where he sexually abused the Plaintiff and his brothers. (<u>Id</u>.).

- Jay Sessions, as an Assistant to the Mission President, had supervisory responsibility for the missionaries in the field, and was the "eyes and ears" of the Mission President with regard to the conduct of these missionaries. (<u>Id</u>., § B, ¶ 10, 13).

- Robert White had a litany of personal problems while on the mission, which included fighting with his missionary companions, laziness and disinterest with his missionary work, psychological problems and dishonesty with other missionaries and his constituents.  Jay Sessions and White's companion, Jay Larson, were also aware of Robert White's past use of marijuana and LSD. (<u>Id</u>., § B, ¶ 18).

- At the time that Robert White received his missionary appointment, he was a recent convert to the Church, and came from a large metropolitan area; he thus did not have a track record or history with Church official that would be relied upon.  Despite this, the Church conducted

only superficial interviews with Robert White preceding his appointment, and failed to interview references, friends, teachers, family, etc., or otherwise conduct an adequate investigation of his background sufficient to place him in close contact with minors and families as a missionary.  In addition to the accusation that he raped a minor, prior to becoming a missionary Robert White had a sexual experience with other boys and one with an adult male.  (Id., § B, ¶¶ 1-2).

These facts are more than sufficient to demonstrate a genuine issue of material fact regarding the foreseeability that Robert White would sexually abuse minors in the missionary field.  In Small, the Court addressed the issue of whether there were sufficient facts to show that the abduction, rape and murder of the plaintiff's decedent in the defendant hospital's parking garage was foreseeable.  The Court held that the issue of foreseeability was for the jury, and reversed the trial court's grant of summary judgment in favor of the defendant hospital.  Id. at 413.  In the holding, the Court noted that the similarity of prior acts is not the pertinent inquiry for determining foreseeability; rather, foreseeability must be viewed in light of all of the facts and circumstances.  Here, in light of all of the information that the Church knew of or should have known of before Robert White arrived for his missionary assignment in Flandreau, it cannot be said that a reasonable person would have been surprised by Robert White's subsequent sexual abuse of a minor who stayed overnight in his missionary apartment.  There is therefore an issue of fact regarding foreseeability, and summary judgment on this issue would be improper.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Defendants' Motion for Summary Judgment be denied in its entirety.

Dated this __24th__ day of December, 2007.

_/s/ *Stephanie E. Pochop* _____
Stephanie E. Pochop
JOHNSON & EKLUND
P.O. Box 149
Gregory, SD  57533
Phone:  (605) 835-8391
Fax:  (605) 835-8742
Johnson@gwtc.net

And

By:___/s/ Adam D. Horowitz_____
Adam D. Horowitz
HERMAN & MERMELSTEIN
ahorowitz@hermanlaw.com
18205 Biscayne Blvd.
Suite 2218
Miami, Florida  33160
www.hermanlaw.com
Tel:  305-931-2200
Fax:  305-931-0877

**CERTIFICATE OF SERVICE**

I hereby certify that on 24th day of December, 2007, I electronically filed the forgoing Memorandum In Opposition to Summary Judgment with the Clerk of the Court using the CM/ECF system and a copy of the same was mailed by first class mail to:

James McMahon
McMahon Law Office, P.C.
101 North Phillips Avenue
Wells Fargo Building, Suite 408
P.O. Boxes 1293
Sioux Falls, SD 57101-1293
jim@mcmahonlawpc.com

Jonathan A. Kobes
Murphy, Goldammer & Prendergast, LLP
101 North Phillips
Wells Fargo Building, Suite 402
Sioux Falls, SD 57101
jon@mgplawfirm.com

___/s/ *Stephanie E. Pochop*_____
Stephanie E. Pochop